UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20023-Civ-SCOLA/TORRES

KELLY A. JORDAN,

    Plaintiff,

v.

CLAUDIO FILIPPONE,
HOLOSGEN, LLC, and
HOLOSGEN HOLDINGS, LLC,

    Defendants.
_____/

## ORDER ON MOTION TO EXCLUDE AN EXPERT WITNESS

This matter is before the Court on Claudio Filippone's ("Dr. Filippone"), HolosGen LLC's, and HolosGen Holdings LLC's (collectively, "Defendants") *Daubert* motion to exclude Ronald G. Quintero ("Mr. Quintero") as an expert witness. [D.E. 90]. Kelly A. Jordan ("Plaintiff") responded to the motion on April 5, 2021 [D.E. 93] to which Defendants replied on April 12, 2021. [D.E. 110]. Therefore, the *Daubert* motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendants' *Daubert* motion is **DENIED**.[1]

---

[1] On April 8, 2021, the Court referred the motion to exclude to the undersigned Magistrate Judge for disposition. [D.E. 102].

## I.     BACKGROUND

On April 1, 2015, Plaintiff and Dr. Filippone entered into a two-week agreement to work together on a small nuclear reactor concept. After the success of their initial engagement, the two reconnected in 2016 and "began to work, jointly as partners, on the Holos Project to develop, fund, and sell small nuclear reactors for mobile application." [D.E. 33 at ¶ 11]. Between January and July 2017, Plaintiff "performed the design and computational work necessary to support the data for a concept paper regarding the Holos Project," and submitted it to academic journals on September 1, 2017. *Id*. at ¶¶ 12-14. Plaintiff and Dr. Filippone then "met on or about October 6, 2017 to discuss formalizing their partnership and the formal business structure for the Holos Project." *Id*. at ¶ 16. Afterwards, the Department of Energy (the "DOE") issued a funding announcement for research proposals.

Plaintiff took primary responsibility in drafting a proposal for the DOE and submitted it for the agency's review. The DOE contacted Plaintiff on January 31, 2018 and encouraged him to submit a complete application on or before March 15, 2018. *Id*. at ¶ 23. However, shortly after that communication, Dr. Filippone demanded that Plaintiff relinquish any ownership rights to the research project, but Plaintiff refused. Plaintiff then claims that Dr. Filippone removed him from the project, submitted an application to the DOE, and usurped the funding opportunity for himself. *Id*. at ¶¶ 25-27. On March 27, 2018, Dr. Filippone took full credit for the project and, on June 10, 2018, the DOE announced a $2.3 million dollar funding award. *Id*. at ¶¶ 32-33. Plaintiff alleges that he has not received any compensation

for the three years of work he dedicated to this project and, as a result, he filed this action for breach of a fiduciary duty, aiding and abetting, civil conspiracy, constructive trust, unjust enrichment, and defamation.

## II.  APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence.[2] *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff

---

[2]  Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, a court's duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

5

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III. ANALYSIS

Plaintiff disclosed Mr. Quintero, as an expert witness, on January 22, 2021 to "[p]rovide the Court with information useful for calculating damages suffered by Dr. Jordan as a result of the actions of Dr. Filippone that are enumerated in the Complaint[.]". [D.E. 90-1 at 3]. Mr. Quintero has more than 45 years as a senior financial professional and has performed "more than 2,000 valuations and appraisals of businesses of all sizes in a wide range of industries, including more than 100 early-stage companies, and numerous government and/or defense contractors[.]". *Id.* at 8. After reviewing the deposition transcripts in this case and other relevant materials, Mr. Quintero opined that Plaintiff's damages were approximately $1.6 million dollars:

> Damages Opinion. It is my opinion, as expressed to a reasonable degree of financial certainty, that the damages sustained by Dr. Jordan as of May 29, 2018, or other proximate date deemed by the Court to be relevant to this matter, as a consequence of the alleged

6

>actions of Dr. Filippone, amounted to $1,656,250 (Exhibit 2), assuming that he would be entitled to 50% of the aggregate fair value of HolosGen that amounted to $3,312,500 (Exhibit 2) as of the Measurement Date.

*Id*. at 3-4. Mr. Quintero reached this opinion with the use of a cost and market approach analysis to create a valuation for the underlying project. *Id*. at 4 (noting that there are three general valuation approaches: "(1) the cost approach; (2) the market approach; and (3) the income approach.").³

Defendants acknowledge that Mr. Quintero is qualified to render an opinion under *Daubert* because he is a certified public accountant, holds several degrees in accounting and investment management, and has a rich background in financial forensics and business evaluation. However, Defendants seek to exclude Mr. Quintero because his opinions are based on false allegations and a flawed methodology. Defendants complain that Mr. Quintero's report relies too heavily on Plaintiff's own self-serving allegations and considers facts not in evidence as the basis for those opinions. Defendants take issue with Mr. Quintero's "cost approach" because he assumes the number of hours worked on this project, conflates that assumption with an unsupported hourly rate, and arrives at a dubious conclusion that the value of the project is the same as the funding contract award from the DOE. Defendants also say that similar flaws are included in Mr. Quintero's

---

³  Mr. Quintero did not apply the income approach "due to the absence of prospectively oriented financial information pertaining to the Company as of the Measurement Date." [D.E. 90-1 at 5].

"market approach" analysis and that the report is otherwise filled with questionable and incorrect assumptions.

To begin, the first argument is that Mr. Quintero's opinions should be excluded because they are based on Plaintiff's own self-serving and false allegations. These allegations include, among others, claims about the underlying technology, the 1000 hours Plaintiff spent on the project, Dr. Filippone's $250/hour billable rate, and the contention that HolosGen is a "seed stage company." Defendants say that all of these allegations are false, and that Mr. Quintero has no personal knowledge of the facts other than Plaintiff's allegations. Defendants suspect that the actual reason Plaintiff wants to use Mr. Quintero as an expert witness is because, under that cloak, she can introduce evidence that would otherwise be inadmissible.

The second argument looks to Mr. Quintero's valuation of the project and Plaintiff's damages. This includes complaints about Mr. Quintero's comparison of the DOE contract to an asset, his assumption on the number of hours that Plaintiff worked and a misunderstanding of the DOE award when it was merely a reimbursement for labor and materials. Defendants also claim that, after Mr. Quintero made an incorrect valuation of the project, he doubled down on that error when he assessed Plaintiff's damages. Defendants say that Mr. Quintero's determination is basely solely on an allegation that Plaintiff was entitled to half of the equity in HolosGen. Yet, Defendants argue that there is no evidence to support that allegation because Dr. Filippone and Plaintiff failed to reach an agreement on

their arrangement and "certainly did not agree to an assignment of half the equity in HolosGen to [Plaintiff] for zero consideration." [D.E. 90 at 11]. And even if an agreement existed, Defendants reason that Mr. Quintero's valuation would still be incorrect because it would require HolosGen to be liquidated. Thus, Defendants ask that the Court exclude Mr. Quintero or, in the alternative, preclude him from testifying on facts not in evidence.

The primary reason Defendants' *Daubert* motion lacks merit is because all of the arguments presented go to the *weight* of the Mr. Quintero's opinions as opposed to their *admissibility*. Defendants complain, for example, that Mr. Quintero relies on facts not in evidence and that his actual purpose is to present an opinion that would otherwise be inadmissible. But, putting aside the fact that this argument relies largely on speculation and a mere denial of Plaintiff's allegations, Federal Rule of Evidence 703 explicitly allows experts to rely on evidence that would otherwise be inadmissible if an expert in a particular field would rely on the same facts or data in forming an opinion on a certain subject:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703; *see also Robinson v. City of Montgomery*, 2005 WL 6743206, at *1 (M.D. Ala. Mar. 2, 2005) ("Fed. R. Evid. 703 permits experts to offer opinion testimony based on otherwise inadmissible evidence if the facts and data are 'of a

9

type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"). And there is nothing in this record to suggest that Mr. Quintero has run afoul of this rule or that he has considered items that experts in his field would omit in forming an opinion on the facts of this case.[4]

Defendants' motion is also unavailing because "[a]n expert is . . . permitted to base his opinion on a particular version of the disputed facts and the weight to be accorded to that opinion is for the jury." *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1265 (S.D. Fla. 2012) (quoting *Walker v. Gordon,* 46 F. App'x 691, 695–96 (3d Cir. 2002)). The reason an expert is afforded this leeway is because it is ultimately up the jury to make the final determination. If there is a possibility that a jury could find Plaintiff's allegations to be credible and consistent with Mr. Quintero's opinions, then it would be serious error to exclude the latter merely because the facts of this case are disputed. The same holds true if a jury credits Defendants' testimony and finds Plaintiff's allegations to be unavailing.

In either circumstance, it is the role of the jury – not a trial court – to weigh the credibility of competing allegations and the testimony of witnesses. *Id.* ("[I]t is well within the province of the jury to weigh the credibility of these competing

---

[4] Defendants accuse Mr. Quintero of having a fundamental misunderstanding of the basic facts in this case and that his opinions do not go hand in hand with the inferences he makes. But, based on our independent review of Mr. Quintero's expert report, that is a clear overstatement. Mr. Quintero not only has a firm understanding of this case, but he carefully explained each of his approaches and the underlying assumptions he used in forming them. Defendants' actual complaint is that Plaintiff's allegations are false, but Defendants have failed to explain why that should result in the exclusion of an expert. If the standard was that easy, any defendant would label a plaintiff's allegations as false and seek to exclude expert opinions and testimony. That is, of course, not the rule and for good reason.

10

versions.") (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005) (recognizing that believability or persuasiveness remains an issue for the trier of fact)). That means when Defendants ask to exclude Mr. Quintero's opinions because of Plaintiff's false allegations, their actual request is for the Court to weigh the merits of the case and supplant the role of the jury before trial. That is not for us to decide nor is it appropriate for Plaintiff to seek that relief with a *Daubert* motion. *See, e.g.*, *Salvani v. Corizon Health, Inc.*, 2019 WL 4101794, at *4 (S.D. Fla. Aug. 29, 2019) ("If Plaintiff believes that his set of facts are more accurate, he has ample opportunity to cross-examine Dr. Fournier at trial to undermine Dr. Fournier's opinion. However, to do so on a *Daubert* motion would be inappropriate when there are several factual disputes and an expert relies on one side of a story in determining a patient's illness.").

To be sure, Defendants will have every opportunity at trial to call their own experts, to cross-examine Mr. Quintero on his opinions, and to present any other evidence to undermine Plaintiff's allegations. Defendants may not, however, use a *Daubert* motion and exclude an expert simply because of disputed allegations and an expert that bases an opinion on one set of facts over another. *See id.* at *4 ("Plaintiff's motion is unpersuasive because Plaintiff has merely identified potential weaknesses in Dr. Zawitz's expert report. Plaintiff argues, for instance, that Dr. Zawitz failed to consider any contradictory authority when he reached his opinions. While that may be a flaw for impeachment purposes at trial, this fails to show that his opinion is unreliable under *Daubert*.").

11

Defendants' second argument is that Mr. Quintero failed to include a scientifically sound methodology to value the underlying project and to estimate Plaintiff's damages. Defendants complain, at the outset, that Mr. Quintero assumes that a federal research grant is the same as the market value of a company. But, even if this is a valid critique and Mr. Quintero's valuation methods are somewhat misplaced, Defendants have failed to explain why these shortfalls cannot be presented at trial so that a jury can determine how much weight should be given to them. This is where Defendants continue to make their analytical misstep. They reason that – since Mr. Quintero's opinions are subject to some amount of criticism – that he must be entirely excluded. Yet, Defendants have not presented anything that would justify that extraordinary relief. And Defendants' alternative request to limit Mr. Quintero's opinions to what they deem as "admissible facts" is, at best, incomplete because it fails to grapple with the requirements under Fed. R. Evid. 703. The Court could spend several additional pages enumerating all of the other complaints presented in the *Daubert* motion and why they lack merit. However, there is no need to do so because all of the arguments take aim at the weight that should be given to Mr. Quintero's opinions as opposed to their admissibility. The motion to exclude Mr. Quintero is therefore **DENIED** because, other than the potential weaknesses that Defendants have identified, there is nothing under *Daubert* that would justify the exclusion of this expert.

### *IV.  CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' *Daubert* motion to exclude Mr. Quintero is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of April, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge